UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
BARBARA LOUIS,

        Plaintiff,

  - against -                            Case No. 23-CV-06470
                                          Hon. Vernon J. Broderick

VICTOR NIEDERHOFFER,

        Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

### DEFENDANT'S MEMORANDUM OF LAW
### IN SUPPORT OF MOTION TO DISMISS

Dated:  August 28, 2023

**WILK AUSLANDER LLP**
Stuart M. Riback
Helen A. Rella
825 Eighth Avenue, Suite 2900
New York, New York 10019
(212) 981-2300
sriback@wilkauslander.com
hrella@wilkauslander.com

*Attorneys for Defendant Victor Niederhoffer*

1

# TABLE OF CONTENTS

Preliminary Statement ................................................................................................5

Facts ...........................................................................................................................7

   A.  Passage of the ASA; amendment of GMV Law ...............................................7

   B.  Background and prior proceedings....................................................................8

      1.  The parties....................................................................................................9

         a.  Victor Niederhoffer ..............................................................................9

         b.  Barbara Louis .....................................................................................10

      2.  Previous proceedings ..................................................................................11

         a.  Pre-Suit; filing of First Action ...........................................................11

         b.  Answer and Counterclaim ...................................................................12

      3.  Conference with Judge Schofield; withdrawal of claims ..........................12

   C.  Louis's allegations in the current complaint ..................................................14

Argument .................................................................................................................17

   I.  Niederhoffer Cannot Be Liable Under The GMV Law.....................................18

   A.  The GMV Law Did Not Exist At The Time Of The Alleged Events and Is Not Retroactive ...................................................................................................18

   B.  Louis Has Not Alleged A Violation Of The GMV Law In Any Event. ...............19

   II.  Louis Has Not Plausibly Alleged A Predicate Violation Of Article 130 Of The Penal Law That Is Required To State A Claim Under The ASA. ..............................20

   A.  Lack of consent under Penal Law § 130.05[2](a) and (b).....................................21

   B.  Lack of consent under Penal Law § 130.05[2](d)...............................................21

   III.  The reopened statutes of limitations in the ASA and VGA Law are unconstitutional under the New York State Constitution. ...............................................22

**<u>TABLE OF AUTHORITIES</u>**

Page(s)

Cases

*Ashcroft v. Iqbal*
  556 U.S.662 (2009)……………………………………………………………14, 16
Adams v. Jenkins,
index no. 115745/03, 2005 WL 6584554 (Sup. Ct. N.Y. Co. 2005)…………………….. ...........17, 18

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
493 F.3d 878 (2d Cir. 2007) .................................................................................... 16
*Bell Atl. Corp. v. Twombly,*
  550 U.S. 5445 (2007 ............................................................................................. 16
*Breest v. Haggis,*
  180 A.D.3d 83, 115 N.Y.S.3d 322 (1st Dep't 2019) ................................. 5, 6, 17, 19
*Bruno v. Metropolitan Transp. Authority,*
  554 F.Supp.2d 3935 (S.D.N.Y. 2008 ..................................................................... 14
*Chambers v. Time Warner, Inc.*,
  282 F.3d 147 (2d Cir. 2002)................................................................................... 16
*Ferrari v. Cnty. of Suffolk,*
  790 F.Supp.2d 34 (E.D.N.Y. 2011) ................................................................... 7, 17
*Gallewski v. Hentz & Co.*,
  301 N.Y. 164, 93 N.E.2d 620 (1950) ..................................................................... 22
*Garcia v. Comprehensive Center, LLC,*
  2018 WL 3918180, 2018 Fair Empl.Prac.Cas. (BNA)5, slip op. at 5 (S.D.N.Y. 2018 ........... 19
*Gross v. Weber*,
  186 F.3d 1089 (8th Cir. 1999) .............................................................................. 18
*Hughes v. Twenty-First Century Fox, Inc.*,
  304 F.Supp.3d 429 (S.D.N.Y. 2018).................................................................. 18, 19
*In re World Trade Center Lower Manhattan Disaster Site Litigation,*
  30 N.Y.3d 377, 89 N.E.3d 1227(2017)................................................................ 21, 22
*g Tellabs, Inc. v. Makor Issues & Rights, Lt,*
  *d.*, 551 U.S. 30322 (20 ...................................................................................... 6, 16
*Landgraf v. USI Film Prods.*,
  511 U.S. 244 (1994)............................................................................................ 18
*Majewski v. Broadalbin-Perth Central School Dist.,*
  91 N.Y.2d 577 (1998) .......................................................................................... 17
*McCann v. Walsh Constr. Co.,*
  306 N.Y. 904, 119 N.E.2d 596 [1954].................................................................... 22
*PB-36 Doe v. Niagara Falls City School District,*
  72 Misc.3d 1052, (Sup. Ct. Niagara Co. 2021)........................................................ 23
*PC-41 Doe v. Poly Prep Country Day School,*
  590 F.Supp.3d 551 (E.D.N.Y 2021) ...................................................................... 22
*Plaut v. Spendthrift Farms, Inc.*,
  514 U.S. 211 (1995)............................................................................................ 21

*Port Dock & Stone Corp. v. Oldcastle Ne., Inc.*,
  507 F.3d 1171 (2d Cir. 2007) ........................................................................... 16
*R.H. Damon & Co. v. Softkey Software Prod., Inc.*,
  811 F. Supp. 986 (S.D.N.Y. 1993) ...................................................................... 7
*Robinson v. Robins Dry Dock & Repair Co.*,
  238 N.Y. 271, 144 N.E. 579 (1924) ................................................................... 22
Rossbach v. Montefiore Medical Center,
  2021 WL 930170 (S.D.N.Y 2021) ...................................................................... 19
*Starr v. Sony BMG Music Entm't*,
  592 F.3d 3141 (2d Cir. 2010 ............................................................................. 16
*Kaplan v. Lebanese Canadian Bank SA*,
  L, 999 F.3d 84254 (2d Cir. 202 ........................................................................... 6
*United States v Morrison*,
  529 U.S. 598 (2000) ............................................................................................ 17
*Vengallatore v. Cornell Univ.*,
  36 F.4th 872 (2d Cir. 2022 ................................................................................... 6

Statutes

NYCRR §§ 10-1101 et seq. ......................................................................................... 7
N.Y. Penal L. §§ 130.25, 130.3 ................................................................................. 19


Rules

Fed. R. Civ. P. 12(b)(6) ............................................................................................... 3
§ 214-J to the New York Civil Practice Law and Rules ............................................ 6

Defendant Victor Niederhoffer respectfully submits this Memorandum of Law in Support of his motion to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

## Preliminary Statement

The Complaint in this action is Louis's second attempt to state a claim against Niederhoffer. (Louis is *pro se*).  She withdrew her first attempt at the suggestion of Judge Schofield.  *See* p. 12-14, *infra.*

In the prior case, Louis asserted a counterclaim against Niederhoffer under the New York Adult Survivors Act ("ASA"), claiming that he had raped her 115 times between 1973 and 1978 while she was employed at Niederhoffer's former business.  Louis alleged repeatedly that she "was coerced not at gunpoint or knifepoint, but at jobpoint."  AC[1] ¶¶ 4, 21, 30.  In other words, she claimed economic, not physical, coercion.

For the record:  Niederhoffer unqualifiedly denies exerting any coercion of any kind upon Ms. Louis, economic or otherwise.  To the contrary, he and Ms. Louis had a years-long consensual affair and were on the best of terms throughout that time and for years thereafter, even after the affair ended, and even after she left Niederhoffer's employ.  Ms. Louis was a highly regarded employee who was given, and successfully took, a leading role in dealing with clients and advancing the business.  She was trusted, and vindicated that trust by her high-level performance.  She was given raises and promotions.  She left Niederhoffer's employ of her own accord in 1979, about two years after the consensual affair ended.  This action should be dismissed, but if it is not, Niederhoffer will prove all this to a fare-thee-well.

---

[1]    "AC" refers to Louis's Answer and Counterclaims in the first action, dated December 22, 2022.  A copy appears as Exhibit 3 to the Declaration of Stuart M. Riback, dated August 28, 2023 ("Riback Dec.").  It was previously filed in the prior action, 22-cv-10017, dkt. nos. 11-2, 14.

Be that as it may, the statute of limitations for any claim based on events in the mid- to late 1970s ran out long ago. The only claims Louis now asserts are: (1) under the Victims of Gender-Motivated Violence Protection Law ("GMV Law"), NY Admin. Code §§ 10-1101 *et seq.* and (2) under the ASA, which reopened for one year the statute of limitations for claims based on conduct that violated New York Penal Law Article 130 (Article 130 describes various sex crimes, all of which require as an element that the victim did not consent, Penal Law § 130.05[1]). The complaint makes reference to both in the *ad damnum* clause.

Louis's claims in the first action were under the ASA. Louis has no claim under the ASA because, although she alleged many instances of sexual intercourse, she did not allege that Niederhoffer ever forced to have to sex with him by force or threat of imminent force, which is necessary to establish lack of consent. She alleged only economic pressure. That precise defect was exactly the reason why Judge Schofield urged her to withdraw the ASA claim in the prior case. *See* Transcript of Feb. 22, 2023 conference ("2/22/23 Tr."), Riback Dec. Ex. 4, at pp. 4-6.

Her current complaint appears to be pleaded primarily under the GMV Law, though the *ad damnum* also invokes the ASA. But the claim under the GMV Law fares no better. The GMV Law did not come into existence until 21 years after Louis left Niederhoffer's employ. It is not retroactive and thus cannot apply. In addition, Louis does not allege (and cannot) that Niederhoffer was motivated by animus toward women, which is a key element of a claim under that law.

Distasteful as it is, Niederhoffer has no alternative but to go through the history of this case. It will be apparent quite readily that there is no claim here. Niederhoffer will soon turn eighty years old and is at the tail end of an illustrious career. He does not know what caused Louis to change her attitude toward Niederhoffer sometime between 2000 and 2019. Suffice it to say that Niederhoffer is deeply disappointed that someone he valued and thought of fondly has decided, almost 45 years after leaving his employ, to accuse him of monstrous behavior.

The complaint fails to state a claim for relief.  It cannot be fixed.  It must be dismissed, with prejudice.

## Facts

**A.      Amendment of GMV Law; Passage of the ASA**

The GMV Law was passed in 2000, in *Breest v. Haggis*, 180 A.D.3d 83, 85, 115 N.Y.S.3d 322, 324 (1ˢᵗ Dep't 2019).  It does not purport to apply retroactively.  It was amended in 2022 to reopen the statute of limitations for GMV Law claims for a two-year period running from six months after September 1, 2022 until two year and six months from that same date.  NYCRR § 10-1105(a).  The ordinary limitations period for claims under the GMV Law is seven years.  *Id.*

The ASA added § 214-J to the New York Civil Practice Law and Rules ("CPLR").  Section 214-J revokes for one year the statute of limitations for tort claims based on conduct that constitutes a sex crime under Article 130 of the New York Penal Law.  It became effective on May 24, 2022, which means the one-year period for suit began six months later, on November 24, 2022 (and will end on November 24, 2023).[2]

---

[2]      Section 214-J reads in relevant part as follows:

Notwithstanding any provision of law which imposes a period of limitation to the contrary and the provisions of any other law pertaining to the filing of a notice of claim or a notice of intention to file a claim as a condition precedent to commencement of an action or special proceeding, every civil claim or cause of action brought against any party alleging intentional or negligent acts or omissions by a person for physical, psychological, or other injury or condition suffered as a result of conduct which would constitute a sexual offense as defined in article one hundred thirty of the penal law committed against such person who was eighteen years of age or older, . . . which is barred as of the effective date of this section because the applicable period of limitation has expired, and/or the plaintiff previously failed to file a notice of claim or a notice of intention to file a claim, is hereby revived, and action thereon may be commenced not earlier than six months after, and not later than one year and six months after the effective date of this section. . . .

**B.     Background and prior proceedings**

On a motion to dismiss, the Court is required to accept as true the allegations of the complaint, but it may also look at documents fairly incorporated in the complaint as well as matters of which it may take judicial notice. *See Vengallatore v. Cornell Univ.*, 36 F.4ᵗʰ 87, 102 (2d Cir. 2022); *Kaplan v. Lebanese Canadian Bank SAL*, 999 F.3d 842, 854 (2d Cir. 2021) (*quoting Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). As Judge Carter observed last year in *Dabah v. Franklin*, 19-cv-10579, 2022 WL 973834, slip op. at 2 (S.D.N.Y. Mar. 31, 2022):

> The Court may also "take judicial notice of prior pleadings, orders, judgments, and other related documents that appear in the court records of prior litigation and that relate to the case *sub judice*," *Ferrari v. Cnty. of Suffolk*, 790 F.Supp.2d 34, 38 n.4 (E.D.N.Y. 2011), as well as documents submitted by defendants if "(1) plaintiffs have undisputed notice of the contents of such documents; and (2) such documents are integral to the plaintiffs' claim," *R.H. Damon & Co. v. Softkey Software Prod., Inc.*, 811 F. Supp. 986, 989 (S.D.N.Y. 1993).

The Court may note that Louis's current complaint is somewhat cryptic in that it does not provide any context or background for the facts it alleges. It appears to assume the reader is familiar with the parties' prior employment and personal relationship, which were set forth in some detail in the pleadings in the first action ("First Action" or "FA"), as well as with the proceedings in the First Action. Ms. Louis is *pro se*, which would explain the unconventional form of her complaint.

Because the current complaint appears to assume familiarity with them, we refer to proceedings in the first action for purposes of background. The Court may, of course, take judicial notice of them. Accordingly, the facts recited below come from the complaint in this case ("Complaint," Riback Dec. Ex. 1), allegations in Niederhoffer's complaint in the First Action ("First Action Complaint" or "FAC", Riback Dec. Ex. 2) that Louis did not deny, or the allegations in Louis's Answer and Counterclaim in the First Action ("AC"). (Niederhoffer had initiated the FA to obtain a declaration of non-liability to Louis; as described in fn.5, *infra*, he withdrew it at Judge Schofield's

recommendation when she also recommended that Louis withdraw her counterclaim under the ASA.)

      1.     **The parties**

           a.     **Victor Niederhoffer**

Louis did not dispute the allegations of ¶¶ 10-15 of the FAC, which describe Niederhoffer's background.[3]  As set forth there, Niederhoffer has been a professor, investment banker, hedge fund manager, author, investor and columnist (he is now retired).  Niederhoffer, the son of a New York City police officer and a school teacher, is a 1964 graduate of Harvard College, and earned his Ph.D. from the University of Chicago in 1969.  His areas of study were economics and statistics.

Niederhoffer was a professor of finance at the University of California, Berkeley, from 1967-1972.  He was a pioneer in the use of statistics to analyze market movements.  As his Wikipedia page (https://en.wikipedia.org/wiki/Victor_Niederhoffer) reflects, Niederhoffer's groundbreaking 1966 paper *Market Making and Reversal on the Stock Exchange* led to his being generally regarded as the pioneer of statistical arbitrage and market microstructure studies.  After leaving academia, he ran an investment bank and a trading operation, and engaged in private equity transactions.

Niederhoffer is the author of two books: *The Education of a Speculator*, published 1998; and *Practical Speculation* (written with Laurel Kenner, 2005).  He also is the author of numerous academic papers and articles.  From 2000 to 2003 he and Ms. Kenner wrote a column on commodities trading for MSN and Worldly Investor.

Over the course of the past decades, Niederhoffer has been a mentor and guide to many people in the financial industry; even today he has a substantial following on social media.

---

[3]     The AC says with respect to ¶¶ 10-15 that she does not dispute the allegations, though she does add "In some cases she does not have knowledge of what [Niederhoffer] Plaintiff did."  Which items she did not know about are not specified.

In his younger days, Niederhoffer was a champion squash player and has maintained his interest in racket sports throughout his life.  He has been elected to the squash hall of fame.  He was the first president of the World Professional Squash Association.

During the 1970s, Niederhoffer with some others was a principal in an investment banking firm called Niederhoffer, Cross & Zeckhauser, Inc. ("NCZ").  NCZ dealt primarily with small- to medium-sized businesses: raising money for them and facilitating change-of-control transactions.

b.      **Barbara Louis**

The following description of Ms. Louis is based solely on the allegations of the FAC that she did not deny (in other words, this is Niederhoffer's description of Louis.).  Louis was employed by NCZ from approximately 1973 or 1974 to 1979 (Louis says her employment began in 1974, *see* AC ¶16).  She began her employment as Niederhoffer's assistant and rose to be a trusted member of the NCZ team.  She assisted with many of NCZ's transactions and clients, including many of the most important ones.  She was a capable and valued employee and over time her job responsibilities increased.  She was a valued and trusted member of the NCZ team: meeting with clients and prospective clients and handling various aspects of transactions with only light oversight. (FAC ¶¶ 16-17, AC ¶¶ 16-17).[4]

On many occasions – likely several dozen -- Louis accompanied principals of NCZ to meet with clients and prospects.  These included Kelly Manufacturing, Beatrice Foods and Charleston Rubber.  At times Louis travelled out of town on NCZ business as well.  Louis was the person primarily in charge of NCZ's purchase and divestiture of a seed company.  She also worked on several direct mail projects. (FAC ¶17, AC ¶¶ 17).

---

Niederhoffer also alleged in FAC ¶ 16 that Louis got regular raises, but Louis disputed that (AC ¶ 16).

In late 1979, Louis advised Niederhoffer that she was resigning from her job at NCZ in order to dedicate her time to promoting animal rights.  (FAC ¶20; AC ¶20).

### 2.    Previous proceedings

#### a.    Pre-Suit; filing of First Action

Shortly after Governor Hochul signed the ASA but months before it went into effect, an attorney claiming to represent Louis sent Niederhoffer a letter.  FAC ¶ 34, AC ¶ 31-35.  The letter advised that Louis claimed Niederhoffer had committed "multiple sexual assaults and rapes that occurred from in or about 1974 to 1979 at 35 East 35th Street [Louis's address] and various other locations in New York City."  The letter offered to discuss a possible resolution to avoid going through litigation.  *Id.*; FA dkt. 11-4.

Niedherhoffer's counsel (Stuart Riback and Helen Rella of Wilk Auslander LLP) set up a call with that attorney, Linc Leder of Slater Slater Schulman LLP, to discuss the matter.  On that call, which took place on July 6, 2022, Mr. Leder conveyed Ms. Louis's claims that she had been raped 115 times by Mr. Niederhoffer at her apartment at 35 East 35th Street and elsewhere, and twice on business trips, when Ms. Louis was employed at NCZ in the 1970s.  Counsel requested a demand from Mr. Leder so Niederhoffer could evaluate the matter intelligently. FAC ¶¶ 32-33, AC ¶ 31-35.

Mr. Leder never conveyed a demand.  Instead, a month later Mr. Riback received a letter from Barbara Louis herself, dated August 7, 2022 (FAC ¶ 34; AC ¶ 31-35; FA dkt. 11-5).  The letter begins "I will be handling my claim of sexual assault, rape and attempted trafficking going forward."  The letter demanded $7 million as the price of not litigating.

Faced with what he viewed as an outlandish $7 million demand, Niederhoffer concluded he had no choice but to seek a declaration of nonliability, which he did on November 24, 2022, the day the ASA became effective.  The case was assigned to Judge Schofield under docket number 22-CV-10017 (LGS).

### b.      Answer and Counterclaim

Ms. Louis emailed to Mr. Riback a Word document on December 22, 2022 titled "Answer and Counterclaims."  It is before the Court as Riback Dec. Ex. 2 and was filed as FA Dkt. nos. 11-2 and 14.

### 3.      Conference with Judge Schofield; withdrawal of claims

Judge Schofield's individual rules require a pre-motion conference, including for motions to dismiss.  Niederhoffer requested a pre-motion conference by letter dated January 17, 2023 (FA Dkt. 16, Riback Dec. Ex. 4), seeking leave to move to dismiss Louis's counterclaim.  As set forth in that letter:

> Louis alleges in her counterclaim no fewer than three times, "the Defendant was co-erced not at gunpoint or knifepoint, but at jobpoint."  The counterclaim thus says Louis had sex with Niederhoffer due to economic coercion.  The gist of Louis's position is that she could not have consented to sex due to the power differential between an employee and a boss.  The counterclaim never alleges that Niederhoffer physically imposed himself for sex or threatened to injure her physically if she did not have sex with him.
>
> Under Penal Law § 130.05[1], lack of consent is an element of every sex offense. The types of lack of consent applicable to sexual relations [of the kind alleged in the AC] are "forcible compulsion" and "incapacity to consent."  Each of these terms is defined; for cur-rent purposes, what is notable is that economic coercion does not qualify.  There must be either use of force or use of a threat of immediate force and injury. Because no violation of Article 130 is pleaded, the ASA does not apply and any claims remain time-barred.
>
> In the counterclaim Louis also accuses Niederhoffer of verbally and physically abu-sing her. (Niederhoffer of course denies this.) But Article 130 describes only sex crimes; it does not cover either verbal or physical abuse. Accordingly, any such claims remain time-barred, too.

A pre-motion conference was held via telephone on February 22, 2023.  A copy of the transcript is before the Court as Riback Dec. Ex. 4.  (The transcript will appear in ECF on or after November 2, 2023; *see* FA Dkt. 31.)  At the conference, Judge Schofield advised Ms. Louis as follows (2/22/23 Tr. at 4-6):

> I'm bound by what the statute says.  And that is in Article 130 of the New York Penal Law, and the particular section that is relevant is 130.05.  And it says:  "whether or not specifically stated, it is an element of every offense defined in this article that the sexual act was committed without consent of the victim."
>
>> Let me stop there for just a second.
>>
>> So, in other words, what this law makes actionable are nonconsensual sexual acts committed without the victim's — or in this case, your — consent.
>>
>> But then the statute goes on to define "lack of consent."  And again, I'm bound by the statute.  I understand that your argument is that you did not consent because you were essentially coerced economically.  But what the statute requires is:
>>
>> Quote, A, forcible compulsion; B, incapacity to consent; C, where the victim does not expressly or impliedly acquiesce to the act or conduct, where the offense charged is sexual abuse or forcible touching; or D, the victim clearly expressed that he or she did not consent to engage in such act, and a reasonable person in the act or situation would have understood such person's words and act as an expression of lack of consent, in parentheses, where the offense charged (indiscernible) -- I'm going to ask everyone to (indiscernible) till I'm done.
>>
>> Where the offense charged is rape in the third degree or criminal sexual act in the third degree, closed parentheses.
>>
>> So this statute makes it pretty clear that the – that coercion of the kind that you have described is not sufficient for an action under the statute.  That doesn't mean that – assuming that what you're claiming is true, it doesn't mean that Mr. Niederhoffer is blameless, it doesn't mean that you weren't coerced; but it means as a technical legal matter there is no claim, in my view, under this section.  And what I'm saying is that if you persist in this claim in this court, that is likely what I'm going to decide, and then you will be barred from bringing it anywhere else.

And what I'm going to ask you to do, you don't have to react to that now, but what I'll ask you to do and what I'm going to ask Mr. Niederhoffer to do is give me a letter in a week telling me how you want to proceed.

Niederhoffer's counsel told Judge Schofield immediately that "if Ms. Louis does choose to discontinue this counterclaim and then files it in state court, we will remove it and bring it right back to federal court." *Id.* at 9.  That is exactly what happened, and why this case is now pending in this Court.[5]

## C.   Louis's allegations in the current complaint

Niederhoffer and Louis had what Niederhoffer believes was a consensual sexual affair until around a year before Louis left her employment at NCZ (FAC ¶ 21).  (Louis says the affair ended almost two years before she left, *see* AC ¶ 26 (sex stopped after December 1977) and AC ¶ 20 (Louis left NCZ late in 1979).  Even in the current complaint, and certainly in the AC, Louis never claims that Niederhoffer ever physically compelled her to have sex with him.  To the contrary, she alleged at least three separate times in the AC that no violence was involved: she says she "was coerced not at gunpoint or knifepoint, but at jobpoint."  AC ¶¶ 4, 21, 30."  In other words, she repeatedly insisted that any coercion was economic.

Having learned from Judge Schofield that that is not sufficient under the ASA, Louis has now turned her primary focus to the GMV Law.  Thus, her current complaint says it focuses on Niederhoffer's supposed "violence and ability to commit violence." (Complaint p.1[6]).  Though Louis recites conclusorily in the introductory paragraph that Niederhoffer "sexually abused and with violence coercively raped the Plaintiff," these are mere conclusions that the Court need not accept as

---

[5]    Judge Schofield also advised Niederhoffer that she believed the declaratory judgment claim was defective, and she suggested it be withdrawn as well.  *Id.* at 6-8.  Both parties ultimately did agree to withdraw their claims as suggested.  *See* FA Dkt. 27, 28.

[6]    The complaint is before the Court as Riback Exhibit 1.

true under *Iqbal*, 556 U.S. at 664; *Bruno v. Metropolitan Transp. Authority,* 554 F.Supp.2d 393, 395 (S.D.N.Y. 2008). Louis does not back up this conclusion with actual facts.

The ensuing paragraphs are Louis's best shot at alleging that Niederhoffer acted with gender-motivated violence (to meet the GMV Law) or compelled her to have sex with him by force or threat (to meet the ASA). She alleges a total of six incidents. Even if any of them had a shred of connection to actual events (which they do not), none of them meets the requirements of either statute even if taken at face value:

- ¶ 1 alleges that Niederhoffer told Louis he had a gun and that Louis verified that fact with a fellow employee. She found that "intimidating." Missing is any alleged use of the gun to obtain sexual favors. Nor does she allege that having a gun evidences animus against women.

- ¶ 2 describes two incidents in which Niederhoffer supposedly told Louis that fights with his then-wife occasionally turned violent, and that these arose from Niederhoffer's philandering. Supposedly there were 25-30 incidents, with police reports. Louis actually alleges that Niederhoffer's then-wife agreed he could divorce her if *she* became violent again! None of this indicates that Niederhoffer either committed a violent act against Louis due to animus against women or directed violence or threats toward Louis for the immediate purpose of obtaining sex.

- ¶ 3 does allege violence but nothing currently actionable (because any assault claim is long time-barred): "On 10/16/75, [Niederhoffer] slammed [Louis] into a wall, for trying to avoid having sex with him, causing [Louis] to understand she had better comply with his demands for sex or face worse injury." Besides being fanciful, even this assertion does not meet either statute. It does not meet the GMV Law because it does not remotely indicate animus against women, as distinct from Louis-specific issues, as discussed below, p. 19-20, *infra.* Nor does it allege forcible compulsion of sex under Article 130: even if taken at face value,

in effect all this alleges is that at some later time, she remembered being slammed into a wall and thus agreed to have sex with Niederhoffer to avoid possible further violence.  It does not allege that Niederhoffer slammed her into a wall in order to force her successfully to have sex with him right then, which is what the ASA requires.

- ¶ 4 alleges that Niederhoffer told Louis of a plan to kill a client with whom he had a fee dispute.  If taken at face value, this tends to negate any specifically woman-hating tendency to violence that could lead to a GMV Law claim (the client is not alleged to be female).  A general tendency to violence is not specifically gender-motivated (and in any event, Niederhoffer strongly denies doing any such thing).  And again, this is not an allegation of force or threat to compel Louis to have sex.

- ¶ 5 says, in total, "On 4/6/79, [Niederhoffer] lunged at [Louis] as if planning to strike her."  Not a word about this being a gender-motivated crime or about obtaining sex.  In fact, Louis stated in the AC that her final sexual encounter with Niederhoffer had occurred more than a year earlier, sometime in December 1977, *see* AC ¶ 26.  Nothing about this indicates gender-motivated violence, either.

- In ¶ 6 Louis says Niederhoffer shoved her to the ground on April 7, 1979, "because she failed to say hello to his 3-1/2-year-old daughter who was playing nearby."  Violence for failing to say hello to a child has nothing to do with gender-related animus, so it does not support a GVM Law claim.  Nor can it support an ASA claim because it has nothing to do with sex.  In fact, this was more than a year after the last time Niederhoffer and Louis had sex by Louis's own reckoning.

In short, Louis does not and cannot meet the pleading requirements for a claim under either the GMV Law or the ASA.  The complaint is fatally defective and cannot be fixed.  Accordingly, this action should be dismissed, with prejudice.

# Argument

To survive a Rule 12(b)(6) motion to dismiss, a pleading must state "factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  That means the pleading must allege "enough facts to state a claim to relief that is plausible on its face." *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010) (*quoting Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In applying this standard, the Court accepts as true all well-pleaded factual allegations; that means it should not accept "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id.* The Court will give "no effect to legal conclusions couched as factual allegations." *Port Dock & Stone Corp. v. Oldcastle Ne., Inc.*, 507 F.3d 117, 121 (2d Cir. 2007) (*citing Twombly*, 550 U.S. at 555).  If all the pleading shows is a mere possibility of misconduct - that is, if the well-pled allegations of the complaint have not "nudged [plaintiff's] claims across the line from conceivable to plausible" - the pleading is not plausible and it cannot survive. *Twombly*, 550 U.S. at 570; *Starr*, 592 F.3d at 321 (quoting *Iqbal*, 556 U.S. at 679).

On a dismissal motion, a court may properly consider documents and contracts attached to or incorporated by reference in a pleading. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).  In addition, the Court may consider documents of which it may take judicial notice, including publicly filed documents such as pleadings in a prior action that are pertinent to the case. *Ferrari*, *supra*, 790 F.Supp. 2d at 38 n.4; *Dabah v. Franklin*, *supra*, 2022 WL 973834 at 2.

I.    NIEDERHOFFER CANNOT BE LIABLE UNDER THE GMV LAW

Niederhoffer cannot be liable to Louis under the GMV Law for two reasons, even if her fan-
ciful allegations were true (which they are not).  First, the GMV Law did not exist in 1973-1979, and
like almost all legislation, it does not apply retroactively.  A reopening of the statute of limitations
for GMV Law claims cannot revive liability where none existed in the first place.  And second, Lou-
is's complaint does not set forth facts that can possible lead to liability under the GMV Law even if
it applies (which it does not).

A.    The GMV Law Did Not Exist At The Time Of The Alleged Events and Is
Not Retroactive

The New York City Council passed the GMV Law in 2000 after the United States Supreme
Court held that the federal Violence Against Women Act was unconstitutional in *United States v
Morrison*, 529 U.S. 598 (2000).  As the Appellate Division, First Department explained in *Breest v.
Haggis*, 180 A.D.3d 83, 85, 115 N.Y.S.3d 322, 324 (1st Dep't 2019), the City Council passed the GMV
Law to provide a remedy similar to the one the Supreme Court had struck down at the federal level.
By that time, Barbara Louis was 21 years removed from working for Niederhoffer.

Supreme Court, New York County directly addressed the non-retroactivity of the GMV Law
in *Adams v. Jenkins*, index no. 115745/03, 2005 WL 6584554 (Sup. Ct. N.Y. Co. 2005).  In that case,
Justice Diane A. Lebedeff examined the GMV Law and concluded that, because it created a new
cause of action, it was not the sort of statute that could be given retroactive effect.  Retroactivity of
non-procedural laws is generally disfavored, *Majewski v. Broadalbin-Perth Central School Dist.*, 91 N.Y.2d
577, 584 (1998), *citing Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994).  As the court in *Adams*
noted:

If the new statute does not expressly direct retroactive application, the court should consider
whether such application "would impair rights a party possessed when he acted, increase a
party's liability for past conduct, or impose new duties with respect to transactions already

completed" (*Landgraf v. USI Film Prods., supra*, 511 U.S. at 280), in which case retroactive application generally will be denied as unfair and contrary to policy.

\* \* \*

Under these broad guidelines, the [GMV Law], which creates a new substantive cause of action with a long statute of limitations, and does not provide for retroactive or immediate effectiveness, is not the type of statute that would be given retroactive effect.

Notably, Justice Lebedeff observed that the federal Violence Against Women Act, which was the model for the GMV Law, also was held not to be retroactive in *Gross v. Weber*, 186 F.3d 1089 (8th Cir. 1999).

Here, of course, the GMV Law would not come into existence until more than two decades after Louis's last alleged in-person interaction with Niederhoffer. Because it is not retroactive, there is no way to apply it to Niederhoffer's conduct in the mid- to late 1970s. Accordingly, any claim against Niederhoffer based on the GMV Law must be dismissed.

**B.      Louis Has Not Alleged A Violation Of The GMV Law In Any Event.**

The elements of a GMV Law claim are clear: "(1) the alleged act constitutes a misdemeanor or felony against the plaintiff; (2) presenting a serious risk of physical injury; (3) that was perpetrated because of plaintiff's gender; (4) in part because of animus against plaintiff's gender; and (4) resulted in injury." *Hughes v. Twenty-First Century Fox, Inc.*, 304 F.Supp.3d 429, 455 (S.D.N.Y. 2018).

Nothing in Louis's complaint indicates that any violence against her arose from gender-based animus. Louis has not alleged rape, as shown below in Point II. Thus, the presumption of gender animus in a rape case, *Breest v. Haggis*, 180 A.D.3d 83, 94, 115 N.Y.S.3d 322, 330 (1st Dep't 2019), does not apply here. That means Louis must allege Niederhoffer was hostile to women, not merely to her. As Judge Cote held just two years ago in *Rossbach v. Montefiore Medical Center*, 2021 WL 930170, no. 19-cv-5758 (DLC), slip op. at 10 (S.D.N.Y. 2021), "the animus element requires the plaintiff to present 'extrinsic evidence of the defendant's expressed hatred toward women as a

group' or allege specific 'actions and statements by the perpetrator during the commission of the al-leged crime of violence'" (*citing Breest, supra*).  *Accord Hughes, supra*, 304 F.Supp. 3d at 454; *Garcia v. Comprehensive Center, LLC*, 2018 WL 3918180, 2018 Fair Empl.Prac.Cas. (BNA) 294,165, slip op. at 5 (S.D.N.Y. 2018).  Louis's complaint does neither.

## II.  LOUIS HAS NOT PLAUSIBLY ALLEGED A PREDICATE VIOLATION OF ARTICLE 130 OF THE PENAL LAW THAT IS REQUIRED TO STATE A CLAIM UNDER THE ASA.

Here, the absence of any allegation that Niederhoffer obtained sex by use or threat of physi-cal force is largely dispositive.  As noted on p. 7, *supra*, the ASA reopened the statute of limitations only for injuries "suffered as a result of conduct which would constitute a sexual offense as defined in article one hundred thirty of the penal law committed against such person who was eighteen years of age or older."  Louis is complaining about repeated episodes of sexual intercourse – in other words, she is alleging rape, whether first or third degree, *see* N.Y. Penal L. §§ 130.25, 130.35 (rape in the second degree under § 130.30 does not apply here because Louis was not fifteen years old or mentally incapacitated).  Though Louis did not give details (thankfully), to the extent she alleges oral or anal sex, that is covered by § 130.50.

Under § 130.05, sexual intercourse is a crime only if the victim did not consent; Penal Law § 130.05[1] provides that every sex offense requires lack of consent.[7]  According to Louis's thrice-repeated allegation, "the Defendant was coerced not at gunpoint or knifepoint, but at jobpoint." AC ¶¶ 4, 21, 30.  Submitting to economic pressure, as distinct from physical coercion or threats of physical violence, is not enough to show lack of consent.  Thus she cannot show a violation of Article 130.

---

[7]     That section provides as follows: "Whether or not specifically stated, it is an element of every offense defined in this article that the sexual act was committed without consent of the victim."

### A.    Lack of consent under Penal Law § 130.05[2](a) and (b)

Section 130.05[2] defines lack of consent. The first type of non-consent is "forcible compulsion" under § 130.05[2](a).  "Forcible compulsion" is defined in § 130.00[8] in two ways.  The first is "use of physical force," § 130.00[8](a).  Louis does not claim Niederhoffer ever physically forced her to have sex with him.

The second is "a threat, express or implied, which places a person in fear of immediate death or physical injury to himself, herself or another person . . . ."  § 130.00[8](a) Louis does not allege that Niederhoffer ever compelled her to have sex with him by threatening immediate death or physical injury.  To the contrary: as Louis repeatedly alleges, "the Defendant was coerced not at gunpoint or knifepoint, but at jobpoint."  AC ¶¶ 4, 21, 30.

Lack of consent also can result from "incapacity to consent," as set forth in§ 130.05[2](b). Louis does not claim incapacity to consent, nor can she.  The statute specifically defines the term in § 130.05[3], and Louis does not meet any of the requirements:  she was not less than seventeen years old, § 130.05[3](a); she was not mentally disabled, § 130.05[3](b); she was not mentally incapacitated, § 130.05[3](c); she does not claim to have been physically helpless,[8] § 130.05[3](d); and she was not a ward of the state or in a facility, § 130.05[3](e)-(i).

### B.    Lack of consent under Penal Law § 130.05[2](d)

Under Penal Law § 130.05[2](d), where the charge is third degree rape, the lack of consent must be communicated clearly.  Neither the Complaint nor the AC contains any such allegation. She does not allege any instance in which Niederhoffer persisted in subjecting her to sex after she told him "no."

---

[8]    Under § 130.00[7], "Physically helpless" means that a person is unconscious or for any other reason is physically unable to communicate unwillingness to an act.  Louis alleges nothing of the sort.

**III.    THE REOPENED STATUTES OF LIMITATIONS IN THE ASA AND VGA LAW ARE UNCONSTITUTIONAL UNDER THE NEW YORK STATE CONSTITUTION.**

The due process clause in New York's constitution provides greater protection against retro-active extensions of limitations periods than the federal due process clause.  Federal law generally permits retroactive reopening of the statute of limitations.[9]  In New York, though, such a statute is valid only if it is a "reasonable response in order to remedy an injustice."  *In re World Trade Center Lower Manhattan Disaster Site Litigation*, 30 N.Y.3d 377, 400, 89 N.E.3d 1227, 1243(2017).

Both elements of this analysis must be present for the retroactive reopening to be valid: there must be an identifiable injustice and it must be reasonable to remedy that injustice by retroact-ively reopening the statute of limitations.  As the New York Court of Appeals has explained, this is a "functionalist approach:" "weighing the defendant's interest in the availability of a statute of limi-tations defense with the need to correct an injustice."  *Id.* at 394, 1239.

The mere running of a statute of limitations does not by itself constitute an injustice, other-wise every limitations period could be extended or reopened willy-nilly.  Rather, the case law shows that there must be something external to the statute of limitations itself that makes enforcing the li-mitations period uniquely unjust.

In *Robinson v. Robins Dry Dock & Repair Co.*, 238 N.Y. 271, 144 N.E. 579 (1924), the statute of limitations for wrongful death actions was two years.  But the workers compensation law was the exclusive remedy for the plaintiff to redress her husband's death, so she timely applied for and re-ceived workers compensation benefits.  But about two years after the husband's death, the U.S. Su-preme Court held the New York workers compensation law unconstitutional, and the benefits were revoked.  The Legislature then revived the wrongful death claim by reopening the limitations period. The Court of Appeals upheld the claim revival as a reasonable response to an injustice.

---

[9]    *See, e.g.*, *Plaut v. Spendthrift Farms, Inc.*, 514 U.S. 211, 229 (1995).

In *Gallewski v. Hentz & Co.*, 301 N.Y. 164, 93 N.E.2d 620 (1950), the Legislature reopened the statute of limitations for claims by citizens of countries occupied by the Axis powers.  In that particular case, the administrator of the estate in whose accounts the defendant broker performed unauthorized transactions had been arrested, deported and then killed in a concentration camp.  The injustice of time-barring claims in such circumstances is obvious.

*McCann v. Walsh Constr. Co.,* 306 N.Y. 904, 119 N.E.2d 596 [1954] *aff'd without opinion* 282 A.D. 444, 123 N.Y.S.2d 509 (3d Dept.1953) and *Hymowitz v. Eli Lilly & Co., Inc.,* both dealt with physical injuries that were not manifest until after the statute of limitations ran – *Hymowitz* dealing with delayed effects of a drug, and *McCann* with delayed effects of exposure to compressed air.  In both cases, "it was latent injuries caused by harmful exposure, which the plaintiffs were not able to attribute to an action or omission of the defendant until the statutory period to bring a claim had already expired."  *World Trade Center*, 30 N.Y.3d at 399-400, 89 N.E.3d at 1243.  *World Trade Center* was similar, reopening the statute for workers who had been exposed to toxins during the clean-up after the terror attacks, whose symptoms would not manifest until years later.

The New York Child Victims Act, which reopened the statute for persons who were sexually abused as children, was upheld because many child victims are unable to deal with their trauma until many years after it occurred. *See, e.g., PC-41 Doe v. Poly Prep Country Day School*, 590 F.Supp.3d 551, 563 (E.D.N.Y 2021); *PB-36 Doe v. Niagara Falls City School District*, 72 Misc.3d 1052, 1059, (Sup. Ct. Niagara Co. 2021).

In all these cases, the injustice found by the Court was something external to the limitations period itself – something other than merely the fact that the period had run and it would be nice to permit plaintiffs to sue notwithstanding the passage of time.  If the mere desire to reopen the statute of limitations was itself enough, there would be no purpose to judicial review of the sort the Court

of Appeals requires – after all, *every* running of a statute of limitations could leave some potential

plaintiff without redress, and it is a simple matter to label such a time-bar an "injustice."

Neither the New York City Council nor the State Legislature has identified any particular in-

justice warranting reopening the statutes of limitations for the GMV Law and the ASA, respectively.

The claimed injustice appears to be have been simply that the limitations period had run.  But in

both statutes, the revived claims are defined as those that result from crimes – in other words, seri-

ous wrongs that the victim cannot help but have known about right away.  The victims by definition

were adults at the time of the alleged wrongs.  That means they were fully capable of seeking legal

advice within the then-operative statute of limitations. Unlike every other retroactive extension of

the statute of limitations, nothing about the underlying injury prevented Ms. Louis or any other vic-

tim from reporting the alleged crime or suing on it.  Ms. Louis was not in a concentration camp,

there was no latent injury that took years to manifest, no law entitling her to sue for assault was held

unconstitutional, and there was no childhood confusion that takes years to work out.

It is telling that the sponsor's notes for Senate Bill S66A, which became the ASA, do not of-

fer any justification for the reopening other than the conclusory reference to "widespread recogni-

tion that New York's existing statutes of limitations were insufficient in giving survivors of these

heinous crimes enough time to pursue justice through criminal charges or filing a civil lawsuit."  Its

conclusion is equally conclusory: "Those who have had justice denied them as a result of New

York's formerly insufficient statutes of limitations should be given the opportunity to seek civil re-

dress against their abuser or their abuser's enablers in a court of law."  That is perfectly fine as a po-

licy decision for prospective legislation, but it does not set forth the sort of injustice that the Court

of Appeals has held must be present to make it reasonable to reopen expired claims.

Consider:  there are many, many heinous crimes not covered by Article 130 or not motivated

by gender bias, with many deserving victims, for whom the statute of limitations was equally short.

Elder abuse, assaults, race-based attacks -- the trauma victims suffered, or the fear of retaliation by accomplices, can be equal to or greater than that suffered by victims of sex crimes or gender motivated violence.  People who were physically crippled by criminal enterprises, who lost limbs, who suffered torture, who were blinded – the list is potentially very long.  These crimes can cause lasting fear, both for the victims and their families.  What is the specific injustice of the prior statute of limitations for victims of sex crimes, as distinct from any other heinous crime?  The Senate did not say and neither did the City Council.  It appears they simply enacted "me too" legislation while the issue was in the news.

Undoubtedly some sexual torts cause psychological harm that may trouble certain victims and impair their competence to act promptly.  But if extreme emotional distress alone is enough to excuse competent adults from asserting claims timely, then there is no reason to enforce **any** statutes of limitations for **any** claim based on extreme emotional injury. The City Council and Legislature articulated no qualitative difference between the distress caused by sexual misconduct or gender-motivated violence and the distress caused by other kinds of outrageous behavior.  So there is no identifiable "injustice" beyond simply the fact that the statute of limitations has run – but that is not in and of itself an injustice.

## Conclusion

Niederhoffer's motion should be granted.


Dated:  New York, New York
        August 28, 2023

**WILK AUSLANDER LLP**

By:   *Stuart M. Riback*
      Stuart M. Riback
      Helen A. Rella
825 Eighth Avenue, Suite 2900
New York, New York 10019
(212) 981-2300
sriback@wilkauslander.com
hrella@wilkauslander.com

*Attorneys for Plaintiff*
